IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03009-M

| | |
|---|---|
| JAMES LEVIE CLEWIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Lt. ANDREW WORLEY, et al., )<br>)<br>Defendants. ) | ORDER |

This cause is before the court on plaintiff's motion for reconsideration, Mot. [D.E. 36], and defendants' motion for summary judgment, Mot. [D.E. 22]. These motions are ripe for review.

Procedural History:

On January 6, 2022, James Levie Clewis ("plaintiff"), a state inmate proceeding without prepayment of fees, filed *pro se* a complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 7].

Plaintiff alleges that Lt. Andrew Worley ("Worley"), Capt. Dawn Battle ("Battle"), and Sgt. Lee ("Lee") (collectively, "defendants") violated his constitutional rights at the Columbus County Detention Center (the "Detention Center") sometime between July and December 2, 2020, when, after deliberately flooding a cell, plaintiff and his cellmate were cuffed and shackled to a bench in the intake area and denied water and toileting for 72 hours. Compl. [D.E. 1] at 1, 3–6.

On February 17, 2022, plaintiff moved for appointment of counsel. Mot. [D.E. 8].

On July 11, 2022, the court conducted its initial review, denied plaintiff's motion for appointment of counsel, allowed plaintiff's Fourteenth Amendment claim to proceed, but directed

defendants to address exhaustion of available administrative remedies. See Order [D.E. 11]. Also on that date, summonses were issued as to Worley, Battle, and Lee. See [D.E. 12].

On July 28, 2022, plaintiff was notified that North Carolina Prisoner Legal Services, Inc. ("NCPLS"), was available to assist him with discovery in this action. See [D.E. 13, 14].

On August 2, 2022, summonses were returned executed as to Worley, Battle, and Lee. See [D.E. 15, 16, 17]; but see [D.E. 28] (indicating that a summons was returned unexecuted as to Lee), and Defs.' Mem. [D.E. 23] at n.1 ("While Plaintiff named a 'Sgt. Lee' in the Complaint and a summons was issued regarding a 'Sgt. Lee,' counsel for Defendants has been unable to identify that any such person exists at the Columbus County Detention Center or otherwise.").

On August 3, 2022, plaintiff filed a motion indicating an intent to amend the complaint and seeking legal advice about obtaining witness statements, together with an attached correspondence from NCPLS and what appears to be North Carolina Department of Public Safety policies as to prisoner restraint for behavioral management. See Mot. [D.E. 18]; Mot. Attach. [D.E. 18-1].

On August 5, 2022, plaintiff accepted NCPLS assistance with discovery. [D.E. 19].

On August 12, 2022, defendants Worley and Battle moved to dismiss, Mot. [D.E. 22] (citing Fed. R. Civ. P. 12(b)(6)), and filed a memorandum in support, Defs.' Mem. [D.E. 23].

On August 15, 2022, the court issued a "Rule 12 Letter," notifying plaintiff about the motion to dismiss, the consequences of failing to respond, and the response deadline. [D.E. 24].

On August 22, 2022, plaintiff filed both a response in opposition to the motion to dismiss, Pl.'s Resp. [D.E. 25], and a motion seeking appointment of counsel, Mot. [D.E. 26].

On September 1, 2022, plaintiff filed a supporting memorandum. Pl.'s Mem. [D.E. 27].

On September 27, 2022, summons was returned unexecuted as to Sgt. Lee. [D.E. 28].

2

On October 5, 2022, the court: denied plaintiff's motions seeking legal advice, appointment of counsel, and to amend the complaint; converted defendants' motion to dismiss into a motion for summary judgment premised on plaintiff's purported failure to exhaust available administrative remedies; directed defendants to supplement their motion with documentation as to the Detention Center's grievance procedure and plaintiff's attempted use of this procedure; and allowed plaintiff until November 17, 2022, to file any response. See Order [D.E. 29].

On October 19, 2022, plaintiff filed a response in opposition, Pl.'s Resp. [D.E. 30], and defendants moved for an extension of time, Mot. [D.E. 31].

On October 26, 2022, defendants filed a statement of material facts [D.E. 32], an appendix [D.E. 33], and a memorandum in support [D.E. 34]. Also on that date, the court granted defendants an extension of time until November 9, 2023, to comply with the court's October 5, 2022, order and allowed plaintiff until December 1, 2023, to file any response. Order [D.E. 35].

On November 17, 2022, plaintiff filed what the court construes as a motion seeking reconsideration of prior court orders and a response in opposition to defendants' motion for summary judgment. See Mot. [D.E. 36]; Mot. Attach. [D.E. 36-1].

On November 29, 2022, defendants filed a reply. Defs.' Reply [D.E. 37].

Discussion:

1) Plaintiff's November 17, 2022, motion for reconsideration. Mot. [D.E. 36].

In his November 17, 2022, filing, plaintiff objects both to the order granting defendants' motion for an extension of time and to the undersigned judge "practicing law from the bench, denying plaintiff due process of law, by converting a North Carolina State Bar Licensed Attorney's Motion to Dismiss into a Motion for Summary Judgment [sic]." Mot. [D.E. 36] at 1–2. Plaintiff

3

asserts that the court should review his *pro se* filings leniently, that the legal standard for a motion to dismiss and a motion for summary judgment are distinct, and that the court was required to deny defendants' motion to dismiss. Id. at 2. Plaintiff further contends that any extension of time for defendants is unreasonable, especially because defendants' counsel is in a large law firm and "in Raleigh, mere blocks from the Federal Courthouse, from the Judge . . . [sic]." Id. at 6.

The court construes this filing as a motion seeking reconsideration of both the court's October 5, 2022, order converting defendants' motion to dismiss into a motion for summary judgment and the court's October 26, 2022, order granting defendants an extension of time. See United States v. Winestock, 340 F.3d 200, 203 (4th Cir. 2003) (noting courts "classify *pro se* pleadings from prisoners according to their contents, without regard to their captions.").

"Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," but are "committed to the discretion of the district court." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003). Because no change of law occurred, and because plaintiff fails to show any clear error causing manifest injustice in these prior orders, the court DENIES this motion. See Carlson v. Boston Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017) (permitting revision of interlocutory orders under the following circumstances: (1) a subsequent trial produces substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice).

2) Defendants' motion for summary judgment. Mot. [D.E. 22].

As noted above, the court converted defendants' motion to dismiss into a motion for summary judgment premised on plaintiff's purported failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). See Order [D.E. 29].

4

a) Parties' Arguments:

Defendants argue, *inter alia*, that plaintiff failed to exhaust his available administrative remedies at the Detention Center before filing this action. See Defs.' Mem. [D.E. 23] at 3–7.

In response, plaintiff admits he did not exhaust the Detention Center's administrative remedy process, but asserts he received no response despite filing multiple grievances. Pl.'s Resp. [D.E. 25] at 2. Plaintiff asks, "how can I exhaust the grievance process when deliberately the appropriate officials failed to respond [sic]," and he claims he "exhausted the administrative remedy process to the best of [his] ability." Id. Plaintiff: states that he "did file grievance after grievance," but "did not [receive] anything in return"; asserts the grievance process was "unfairly restricted," he "submitted on the appropriate [grievance] forms 'over & over,'" and he exhausted the grievance process "to the best of [his] ability"; and seeks "a pardon for this exception and to move forward." Pl.'s Mem. [D.E. 27] at 3, 6. Plaintiff contends: "I willingly admitted I did not exhaust the administrative remedy procedure. . . . Nevertheless, I exhausted what was available to me to the best of my ability [sic]." Pl.'s Resp. [D.E. 30] at 3. Plaintiff further states:

> What reason would I have not to exhaust the Grievance Procedure to the max! Just so at least and willfully knowingly [sic] a paper trail so existed, even knowing it is no use. But I still kept submitting! I should not be forced to be held responsible for telling the truth "that I did not exhaust the grievance remedy procedure" (DUE TO) [sic] staff officers['] responsibility to appropriately respond to grievances and request forms. That is neglect of duty and breech of the Detention Center[']s Policy. If there is/was a policy and that gives rise to the request of Defendants Presenting the Policys [sic]. May I respectfully request a subpoena for officer[']s statements. I did to the best of my ability submit numerous of grievance [sic]. William Shawn Buffkin, Junior Thompson, Mrs. Faulk, Corporal Michael Dancil, Officer Mitchelle, Sgt. Danston, Corporal Lancaster, Sergeant Ferris, Captain Trina Worley, Nurse Justin Creech. Those are the officers. All officers above can verify & vouche [sic]. I did turn in grievances on this matter numerous of times [sic].

Id. at 3–4.

5

Defendants' memorandum in support of their motion for summary judgment reiterates arguments that plaintiff failed to exhaust his available administrative remedies at the Detention Center. See Defs.' Mem. [D.E. 34]; see also Defs.' Stmt. Mat. Facts [D.E. 32].

Defendants also rely upon the declaration of the Columbus County Sheriff's Office Chief Jail Administrator Trina Worley (hereinafter, "T. Worley"). See Defs.' App., Ex. A, T. Worley Decl. [D.E. 33-1] at 1–2. T. Worley declares, *inter alia*: the Detention Center had "grievance policy and systems at all times relevant to this action"; during T. Worley's employment, Detention Center "staff have always followed the Grievance Procedures"; the grievance process was available at all times plaintiff was at the Detention Center; and "it was the standard that when an inmate wished to file a grievance, the inmate must fill out a 'Columbus County Detention Center Inmate Request/Grievance Form' . . . and turn it in to a detention officer." Id. at ¶¶3–5.

As to the grievance policy, T. Worley declares that, during the relevant timeframe:

> [T]he Columbus County Detention Center's grievance policy specifically stated that any inmate may file formal grievances through the form. A written response to the inmate grievance would be received by the inmate as soon as possible. If the inmate was dissatisfied with the grievance response, the inmate may file a written appeal to the Hearing Board. The hearing Board ruled on any grievance appeal.

Id. at ¶6.

T. Worley further declares: "As part of [the] Detention Center's regular activities, the [Detention Center] returned all completed grievances to the inmate for their record keeping"; T. Worley reviewed plaintiff's inmate file and "there were no filed grievances on record"; "any grievances filed prior to March 2022 would be in plaintiff's possession"; and that, "[b]ased on [T. Worley's] review of the Detention Center's records, along with [plaintiff's] own admissions, it appears that he did not exhaust the grievance process before filing suit." Id. at ¶¶7–9.

6

In his November 17, 2022, filing, plaintiff argues, *inter alia*: he was a pretrial detainee; the Supreme Court has held "that the grievance system was 'not available' where a person–such as a pretrial detainee–was denied exhaustion [sic]"; he was subjected to inhumane, unconstitutional punishment; "plaintiff was flat out denied procedures at administrative remedy after submitting numerous grievances [sic]"; because the Detention Center is not a prison, the PLRA should not apply; "plaintiff did not abort the exhaustion efforts–the defendants did–and plaintiff did his numerous attempts at grievances as a pretrial detainee. . . not a prisoner"; and "[i]t is the 'custom' . . . that subject county municipality to section § 1983 liability for–flat out–disregarding grievances and inflicting punitive punishments without due process [sic]." See Mot. [D.E. 36] at 1–11.

Plaintiff's attachment states, *inter alia*: "Never a single time has the defendants denied the allegations, 'nor' denied that I the plaintiff did not submit grievance after grievance . . . ."; "I should not have to be held responsible for clearly, willfully admitting I did not exhaust the administrative remedy procedure"; on the grievance form, "there is no place for the receiving officer's name to prove it was submitted"; "just because an inmate fills the form out does not mean it will be adequately responded to"; "anyone can fill them out all day long . . . and that does not guarantee a response will be returned (per exhaustion process)"; "what is the appeals address [sic]"; "this is the 1st time I have ever seen the policy & procedures at [the Detention Center]"; "clearly, any officer/inmate, anyone that knows and/or has been at [the Detention Center] can testify that grievances/request forms ('mysteriously get missing') or non replied [sic]"; "this policy and procedure contradicts everything they do . . . they do not go by this. Yes, they're suppose[d] to. But they don't [sic]"; and "I would have got declarations but it is against policy for an inmate to contact another inmate in N.C." Mot. Attach. [D.E. 36-1] at 1–2.

7

In reply, defendants argue that plaintiff's claims regarding his conditions of confinement are not relevant to whether he exhausted his administrative remedies, and that plaintiff also has not shown that the grievance procedure was unavailable to him. Defs.' Reply [D.E. 37].

b) Legal Standard

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

c) Discussion

The PLRA states, in relevant part, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in

8

court."); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA applies to all "prisoners" as that term is defined in the statute, including pretrial detainees. See Moss v. Harwood, 19 F.4th 614, 621 (4th Cir. 2021). Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (citation, alteration, and internal quotation marks omitted).

Administrative exhaustion under the PLRA, however, is mandatory only if the grievance procedure is actually "available" to the prisoner. See Ross v. Blake, 578 U.S. 632, 642 (2016) (Ross). Grievance procedure is not "available" when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643–44; see Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022) (discussing Ross); Moss, 19 F.4th at 621–23 (discussing Ross); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Failure to exhaust administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

9

Here, the "Inmate Grievance/Request System" policy, reflects, *inter alia*: Detention Center inmates "will be permitted to file grievances and will be assured of written response from officials in a timely and orderly manner without fear of reprisal or prejudice"; a "'grievance' will be defined as a written complaint made to the Administrator by an inmate concerning policy, procedure, conditions or actions by staff that may directly affect the inmate personally"; "A summary of the inmate grievance system will be included in the Inmate Handbook and provided to the inmates at the time of their admission to the Detention Center"; "Detention Officers will assist and encourage inmates to resolve disputes or complaints informally prior to filing a written grievance on the matter. However, under no circumstances will an Officer attempt to discourage or threaten any inmate desiring to file a written grievance"; "Should an allegation be made by an inmate(s) . . . that an Officer has threatened or retaliated against an inmate for filing a grievance, the Administrator will investigate the matter and appropriate disciplinary action, up to and including termination from employment, will be imposed with the approval of the Sheriff"; inmates may file formal grievances on matters including "[a]ctions taken by staff . . . that have the effect of depriving the inmate of a right, service or privilege afforded to them" and "[a]llegations of abuse, neglect or mistreatment by staff"; "The Sergeant will be responsible for ensuring that a sufficient number of 'Inmate Grievance' forms . . . are available in the control room for Officers to distribute to inmates"; "Any inmate confined to the Detention Center may request an 'Inmate Grievance Form' . . . from any staff member"; "Once a request for a form has been made, the staff member will be responsible for providing a form prior to leaving the Detention Center at the end of his/her duty tour"; "The inmate will be responsible for completing the form and for returning the completed form to a Detention Officer"; the following information is required "[i]n order for a

10

grievance to be processed . . . "[i]nmate name[,] staff member or other individual the inmate wants to meet with or receive a reply from[,] a specific description or summary of the incident[,] signature of inmate and date[,] signature of receiving Officer and date"; "Detention Officers are responsible for accepting all completed grievance forms provided to them by inmates"; "Detention Officers will ensure that grievance forms are delivered to the authority to whom the grievance was addressed prior to their departure from the Detention Center or as soon as possible thereafter"; "The person to whom the grievance was addressed will be responsible for reviewing the grievance and providing a written response to the inmate as soon as possible"; "the written response should include . . . [w]hether he/she agrees or disagrees with the inmate's complaint[,] [a]n explanation or reason for how this conclusion was reached[,] [a]ny action that may have been or will be taken to correct the problem or situation, if applicable"; "[a]nswer to grievance will be read to inmate by Shift Supervisor, signed and dated"; "Inmates may appeal the response they received to their grievance to another Detention Center Officer or the Administrator if they are not satisfied with the response"; the procedure for processing appeals is the same as that for responses to inmate grievances; "Any response by the Sheriff to an appeal will be considered final and cannot be overturned"; and "Copies of all appeals and their accompanying responses shall be filed and maintained by the Administrator." See Defs.' App., Ex. B [D.E. 33-2] at 3–4.

Plaintiff admits that he failed to exhaust his administrative remedies under the Detention Center's policy before filing this action. Pl.'s Resp. [D.E. 25] at 2; Mot. Attach. [D.E. 36-1] at 1.

Nevertheless, liberally construed, plaintiff's "sworn and subscribed" November 17, 2022, filing amounts to a declaration that he was denied access to the detention center grievance process when he never received any response despite filing multiple grievances regarding the incident in

question. See Pl.'s Mot. [D.E. 36] at 10. Further, defendants' description of the grievance policy suggests that defendants had no deadline for grievance responses, but inmates lacked the ability to have a grievance deemed denied if no response was received. Cf. Griffin, 56 F.4th at 338. Plaintiff's filings, liberally construed, also seek an opportunity, in discovery, to question Detention Center Officers about his purportedly futile attempts to exhaust administrative remedies. See Pl.'s Resp. [D.E. 25] at 2–3; see also Pledger v. Lynch, 5 F.4th 511, 525–27 (4th Cir. 2021).

After considering the record and reasonable inferences drawn therefrom in the light most favorable to plaintiff, see Scott, 550 U.S. at 378, it presently remains unclear whether the Detention Center's grievance procedure was actually available to him, see Ross, 578 U.S. at 642–44; Griffin, 56 F.4th at 339; Moss, 19 F.4th at 621–23; Moore, 517 F.3d at 725.

Finally, because the court has fulfilled its obligation under 28 U.S.C. § 1915(d) by making efforts to obtain service on the as-of-yet unidentified Sgt. Lee, the court directs plaintiff to show good cause why Sgt. Lee should not be dismissed without prejudice for his failure to obtain service on this defendant within the 90 day time period required by Federal Rule of Civil Procedure 4(m).

## Conclusion:

In sum, the court: DENIES the motion for reconsideration [D.E. 36]; DENIES WITHOUT PREJUDICE the motion for summary judgment [D.E. 22]; DIRECTS plaintiff to show good cause, not later than March 24, 2023, why Sgt. Lee should not be dismissed under Fed. R. Civ. P 4(m); and REFERS the action to Magistrate Judge Robert B. Jones, Jr. for entry of a scheduling order.

SO ORDERED this 8th day of March, 2023.

Richard E. Myers II
RICHARD E. MYERS II
Chief United States District Judge