IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03009-M

JAMES LEVIE CLEWIS,                          )
                                             )
                    Plaintiff,               )
                                             )
        v.                                   )                    ORDER
                                             )
Lt. ANDREW WORLEY, et al.,                   )
                                             )
                    Defendants.              )

This cause is before the court on plaintiff's various motions, see [D.E. 42, 48, 49, 51], and

defendants' motion for summary judgment, Mot. [D.E. 52].    These motions are ripe for review.

Relevant Procedural History:

On January 6, 2022, James Levie Clewis ("plaintiff"), a state inmate proceeding without

prepayment of fees, filed *pro se* a complaint under 42 U.S.C. § 1983.    [D.E. 1, 2, 7].    Plaintiff

generally alleges that Lt. Andrew Worley ("Worley"), Capt. Dawn Battle ("Battle"), and Sgt. Lee

("Lee") violated his constitutional rights at the Columbus County Detention Center (the "Detention

Center" or "CCDC") between July and December 2, 2020.    Compl. [D.E. 1] at 1–5.    Plaintiff

specifically alleges that, after he and a cellmate deliberately flooded their cell, Lee and a non-

defendant officer took plaintiff to the intake area, cuffed his hands to his waist chain and connected

his shackles to a bench, denying him water and toileting for 72 hours; Worley personally tightened

the cuffs and shackles, causing damage to his hands and feet; and Battle "did not help [him], just

ignored [him]."    Id. at 5.    Plaintiff seeks, *inter alia*, money damages.    Id. at 8.

On February 17, 2022, plaintiff moved for appointment of counsel.    Mot. [D.E. 8].

On July 11, 2022, the court conducted its initial review, denied plaintiff's motion for appointment of counsel, allowed plaintiff's Fourteenth Amendment claim to proceed, but directed defendants to address exhaustion of available administrative remedies. See Order [D.E. 11]. Also on that date, summonses were issued as to Worley, Battle, and Lee. See [D.E. 12].

On July 28, 2022, plaintiff was notified that North Carolina Prisoner Legal Services, Inc. ("NCPLS"), was available to assist him with discovery in this action. See [D.E. 13, 14].

On August 2, 2022, summonses were returned executed as to Worley, Battle, and Lee. See [D.E. 15, 16, 17]; but see Defs.' Mem. [D.E. 23] at n.1 ("counsel for Defendants has been unable to identify that any such person exists at the [Detention Center] or otherwise.").

On August 3, 2022, plaintiff filed a motion indicating an intent to amend the complaint and seeking legal advice about obtaining witness statements, together with an attached correspondence from NCPLS and what appears to be North Carolina Department of Public Safety policies as to prisoner restraint for behavioral management. See Mot. [D.E. 18]; Mot. Attach. [D.E. 18-1].

On August 5, 2022, plaintiff accepted NCPLS assistance with discovery. [D.E. 19].

On August 12, 2022, defendants Worley and Battle (collectively, the "moving defendants") moved to dismiss, Mot. [D.E. 22], and filed a memorandum in support, Defs.' Mem. [D.E. 23].

On August 15, 2022, the court issued a "Rule 12 Letter," notifying plaintiff about the motion to dismiss, the consequences of failing to respond, and the response deadline. [D.E. 24].

On August 22, 2022, plaintiff filed both a response in opposition to the motion to dismiss, Pl.'s Resp. [D.E. 25], and a motion seeking appointment of counsel, Mot. [D.E. 26].

On September 1, 2022, plaintiff filed a supporting memorandum. Pl.'s Mem. [D.E. 27].

On September 27, 2022, summons was returned unexecuted as to Sgt. Lee. [D.E. 28].

2

On October 5, 2022, the court: denied plaintiff's motions for legal advice, to appoint counsel, and to amend the complaint; converted moving defendants' motion to dismiss into a motion for summary judgment premised on plaintiff's purported failure to exhaust available administrative remedies; directed moving defendants to supplement this motion with documentation as to the Detention Center's grievance procedure and plaintiff's attempted use of this procedure; and allowed plaintiff until November 17, 2022, to respond. See Order [D.E. 29].

On October 19, 2022, plaintiff filed a response in opposition, Pl.'s Resp. [D.E. 30], and moving defendants moved for an extension of time, Mot. [D.E. 31].

On October 26, 2022, moving defendants filed a statement of material facts [D.E. 32], an appendix [D.E. 33], and a memorandum in support [D.E. 34]. The court also granted moving defendants an extension of time until November 9, 2023, to comply with the court's October 5, 2022, order and allowed plaintiff until December 1, 2023, to file any response. Order [D.E. 35].

On November 17, 2022, plaintiff filed what the court construed as a motion seeking reconsideration of prior court orders and a response in opposition to moving defendants' motion for summary judgment. See Mot. [D.E. 36]; Mot. Attach. [D.E. 36-1].

On November 29, 2022, moving defendants filed a reply. Defs.' Reply [D.E. 37].

On March 8, 2023, the court denied plaintiff's motion for reconsideration, denied without prejudice moving defendants' converted motion for summary judgment, and directed plaintiff to show good cause, not later than March 24, 2023, why Sgt. Lee should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m). See Order [D.E. 38].

On March 9, 2023, Magistrate Judge Robert B. Jones, Jr. entered a scheduling order that appointed NCPLS to conduct discovery on plaintiff's behalf. Order [D.E. 39].

3

On March 22, 2023, plaintiff responded to the court's show cause order.[1]  See [D.E. 41].

On May 15, 2023, plaintiff moved the court to set an answer deadline.[2]  Mot. [D.E. 42].

On July 5, 2023, NCPLS informed the court it had assisted plaintiff with discovery, and given him legal advice, but would provide no further representation in this matter.  [D.E. 44].

On July 11, 2023, moving defendants moved to modify the scheduling order [D.E. 45, 46]. The court granted the corrected motion and extended the motions deadline.  Order [D.E. 47].

On July 21, 2023, plaintiff moved to subpoena documentary evidence, Mot. [D.E. 48],[3] and to amend his complaint, Mot. [D.E. 49] (stating, in relevant part: "the date that the incident took place was 9-8-2020," "It was 48 hours in 5point full restraints, also another set connected to the shackles/leg irons to a bench leg," "'the extra pair' of shackles immobilizes an individual from properly using the toilette/bathroom, getting drinking water from the sink," plaintiff "was fully restrained [as] 'a pretrial detainee' for 48 hrs without any opportunity to be heard, 'either before,' during or after such restraints was forced to carry out . . . for punishment from 9-8-20 – 9-10-20 48 hrs.," and "the write up and officials stating 72 hrs. is where it was a misunderstanding [sic].").[4]

On August 2, 2023, plaintiff filed the declaration of Mason Troy Nickelson.  [D.E. 50].

---

[1] Because plaintiff fails to show good cause for his failure to obtain service on Sgt. Lee within the 90-days required by Federal Rule of Civil Procedure 4(m), the court DISMISSES WITHOUT PREJUDICE Sgt. Lee as a defendant.

[2] Because the court did not require defendants to answer or respond to the complaint, cf. 42 U.S.C. § 1997e(g)(2), the court DENIES this motion [D.E. 42].

[3] Plaintiff has not shown good cause why this discovery was not sought within the discovery period when he had NCPLS assistance.  See Fed. R. Civ. P. 16(b).  Plaintiff also fails to certify "that there has been a good faith effort to resolve discovery disputes prior to the filing of any discovery motions."  E.D.N.C. Local Civil Rule 7.1(c)(2); see Boykin Anchor Co., Inc. v. Wong, No. 5:10-CV-591-FL, 2011 WL 5599283, at *3 (E.D.N.C. Nov. 17, 2011). Accordingly, the court, in its discretion, DENIES this motion [D.E. 48].  English v. Johns, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014).

[4] Because this motion clarifies plaintiff's claims and is not futile, Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc), the court GRANTS the motion [D.E. 49], Fed. R. Civ. P. 15(a)(2), but defendants need not further respond.

4

On August 16, 2023, plaintiff filed a self-styled "letter motion why the court should find favor in/with Plaintiff [sic]."[5]   Mot. [D.E. 51].

On August 28, 2023, moving defendants filed the instant motion for summary judgment, Mot. [D.E. 52], a statement of material facts [D.E. 53], an appendix [D.E. 54], including the declarations of Former Chief Jail Administrator Trina Worley ("T. Worley") [D.E. 54-1], Current Chief Jail Administrator Robert Creech [D.E. 54-5], defendant Battle [D.E. 54-8], and former CCDC Detention Officer Brandon Gore [D.E. 54-9], as well as a memorandum [D.E. 55].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion for summary judgment, the response deadline, and the consequences of failing to respond.   [D.E. 56].

On September 15, 2023, plaintiff filed a response to moving defendants' motion for summary judgment together with attached exhibits.   See [D.E. 57].

On September 29, 2023, moving defendants filed an amended statement of material facts [D.E. 58], the declarations of Columbus Country Deputy Sheriff Victoria Lancaster [D.E. 58-1] at 2–4, and defendant Worley [D.E. 58-2] at 2–4, as well as a reply [D.E. 59].

On October 13, 2023, plaintiff filed a response to moving defendants' amended statement of facts [D.E. 60] (arguing parts of the Lancaster and Worley declarations are false), a document self-styled as "Answering defendants' reply memorandum in support for why the court should grant summary judgment for plaintiff [sic]," [D.E. 61] (generally arguing that the court "should

---

[5] Although he asks the court to find in his favor, see Mot. [D.E. 51] at 9, 13, plaintiff has neither satisfied the filing requirements for a motion for summary judgment under the court's Local Civil Rule 56.1, nor otherwise demonstrated entitlement to judgment as a matter of law, see Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011) ("When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Rules of Civil Procedure").   Accordingly, the court DENIES this motion [D.E. 51].

5

grant summary judgment for plaintiff," asking the court to "convert [] the unserved summons on Sgt. Lee to 1st Sergeant Trina Worley [sic]," agreeing that defendant Battle "only ignored" him, and disputing Worley's declaration), and a self-styled "memorandum in re and JMOL for plaintiff [sic]," [D.E. 62] (generally arguing that the case should go to trial).

On November 3, 2023, plaintiff filed a self-styled "letter motion complaint of perjury."[6] [D.E. 63] (generally arguing that portions of the declarations of Lancaster and Worley are false).

On November 15, 2023, moving defendants filed a response. See [D.E. 64] (responding in opposition to plaintiff's allegations of perjury).

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment

---

[6] Although plaintiff cites 26 U.S.C. § 7206 (providing, under the Internal Revenue Code, for the felony prosecution of any person who, *inter alia*, willfully makes false declarations under penalties of perjury), this tax law provision is wholly irrelevant to the present action, and plaintiff also lacks a constitutional right to initiate a criminal investigation against Lancaster and Worley in any event. See, e.g., Kunzer v. Magill, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009) ("Private citizens have no constitutional or other right to a criminal investigation, nor any judicially-cognizable interest in the prosecution or non-prosecution of another." (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973))).

6

should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

Moving defendants argue, *inter alia*, that plaintiff failed to exhaust available administrative remedies before filing this action. See Defs.' Mem. [D.E. 55] at 9–14 (arguing: plaintiff admitted failing to exhaust administrative remedies at the CCDC; the CCDC has a grievance process that was available to plaintiff at all relevant times; and discovery "uncovered no evidence that Plaintiff exhausted his administrative remedies or that the grievance process was unavailable to him").

The Prison Litigation Reform Act ("PLRA") states, in relevant part, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (citation, alteration, and internal quotation marks omitted). The PLRA applies to all "prisoners" as that term is defined in the statute, including pretrial detainees. See 42 U.S.C. § 1997e(h).

7

Administrative exhaustion under the PLRA, however, is mandatory only if the grievance procedure is actually "available" to the prisoner.    See Ross v. Blake, 578 U.S. 632, 642 (2016) (Ross).    Grievance procedure is not "available" when: (1) it "operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."    Id. at 643–44; see Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022) (discussing Ross); Moss v. Harwood, 19 F.4th 614, 621–23 (4th Cir. 2021) (discussing Ross); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Failure to exhaust administrative remedies is an affirmative defense that defendants generally must plead and prove.    See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

Plaintiff admits that he did not exhaust his administrative remedies at the CCDC as to the relevant incident.    See Compl. [D.E. 1] at 8; Pl.'s Resp. [D.E. 25] at 2; Pl.'s Resp. [D.E. 30] at 3; Pl.'s Mot. Attach. [D.E. 36-1] at 1; Pl.'s Resp. [D.E. 60] at 11.    Thus, the remaining question is whether administrative remedy was available to plaintiff within the meaning of Ross.

In support of their exhaustion argument, moving defendants rely upon averments.    See Defs.' App., T. Worley Decl. [D.E. 54-1] at ¶¶2–15 (declaring, inter alia: as the former CCDC Chief Administrator, T. Worley was custodian records including inmate incident reports, grievance reports, and medical records; although not the Chief Administrator at the time of the incident, T.

8

Worley is familiar with the CCDC Policies and Procedures in place, including the CCDC Grievance Procedures; in 2020, each inmate received a copy of the Inmate Handbook when they arrived at the CCDC; "Inmate Grievance Procedures can be found within the Inmate Rules Pamphlet; "CCDC personnel help illiterate, non-English speaking, or disabled inmates to understand the Inmate Rules Pamphlet, including the Grievance Procedures"; the CCDC had a grievance policy and system at times relevant to the action, *i.e.* between July and December of 2020; during T. Worley's employment, "the CCDC and its staff have always followed the Grievance Procedures"; at the relevant time, "inmates were required to file grievances by filling out a 'Columbus County Detention Center Inmate Request/Grievance Form' (the 'Grievance Form') and turning it in to a detention officer"; "the Grievance Process was available to Plaintiff at all times during his confinement at the CCDC. Officers are not permitted to discourage or threaten any inmates desiring to file a formal grievance"; "The CCDC grievance policy specifically stated that any inmate may file formal grievances through the form. The accused officer would write a response to the complaining inmate and read the response aloud to the inmate 'as soon as possible'"; at times relevant to this action, "the CCDC would have returned all completed grievances to the inmate as part of the CCDC's regular activities. The inmate was advised to retain the Grievance Form for their own record keeping. This policy was changed in April of 2022 when the CCDC began retaining inmate complaints as part of the CCDC's regular recordkeeping"; "Based on my recollection of the period of Plaintiff's confinement at CCDC, there were no filed grievances on record. Pursuant to the CCDC's regular activities during the period of Plaintiff's confinement prior to April of 2022, any complaints filed by Plaintiff prior to April 2022 would have been returned to Plaintiff for Plaintiff to retain for his own records"; "If an inmate

9

was dissatisfied with the grievance response, the inmate could file a written appeal to another Detention Center Officer or to the Administrator. However, if the Administrator had already responded to the initial grievance or a subsequent appeal, then the inmate could not request that the Administrator to reconsider. The Administrator was required to maintain and file all appeals and accompanying responses"; "Though I recall Plaintiff being confined at CCDC, I do not recall Plaintiff filing or appealing any formal grievances in accordance with the published Grievance Procedures. I also do not recall Plaintiff submitting any informal written or oral grievances"; "Therefore, based on my recollection and Plaintiff's own admissions in this suit, Plaintiff did not exhaust the Grievance Process before filing this suit."); id., Creech Decl. [D.E. 54-5] at ¶¶1–14 (declaring, *inter alia*: according to Creech's review of plaintiff's file, there were no grievance appeals on record; the lack of grievance appeals suggests no appeals were filed; and, based on Creech's review and plaintiff's admissions, plaintiff did not exhaust the CCDC grievance process before filing suit); id., Def. Battle Decl. [D.E. 54-8] at ¶8 (declaring, *inter alia*: "Plaintiff never verbally expressed or provided any written grievance to me about how he was treated at the CCDC"); id., Gore Decl. [D.E. 54-9] at ¶9 (declaring, *inter alia*, Gore is "not aware of any formal, written, or oral complaints from Plaintiff.").

In his memorandum in opposition to the moving defendants' instant motion for summary judgment, plaintiff argues, *inter alia*: "Defendants in this case deliberately failed to acknowledge and respond to plaintiff's numerous grievance attempts being submitted [sic]. Due to all of the Grievances submitted . . . constitutes exhaustion of available procedures [sic]." Pl.'s App., Pl.'s Mem. [D.E. 57-2] at 15. Plaintiff further contends that, although an administrative remedy procedure was in place at the Detention Center, "due to it being deliberately disregarded and breach

10

of duty & breach of policy and procedures, on the officers' behalf . . . 'the PLRA' this court should view this as exhausted [sic]." Id. at 16.

As to exhaustion, plaintiff declares, in relevant part: "My due process rights was deliberately disregarded, and even all of the Grievance forms I wrote not a single one was returned!?! [sic]." Pl.'s App., Clewis Decl. [D.E. 57-4] at 10, ¶18.

In his response to moving defendants' amended statement of facts, plaintiff states, *inter alia*: "Since the Administrative remedy was not exhausted due to Defendants neglecting policy, procedures, breaking oaths, falsifying declarations 'with deliberate intent to deception the court' [plaintiff seeks] a polygraph [test] for himself and defendants [sic]." Pl.'s Resp. [D.E. 60] at 11.

In his self-styled "memorandum in re and JMOL for plaintiff [sic]," plaintiff states, *inter alia*: "Battle had no involvement with particular case" but "Battle read incident report and deliberately disregarded & intentionally ignored [plaintiff's] numerous attempts at the administrative remedy process for redress, and in so deliberately disregarding the numerous attempts, can also constitute exhaustion of all available, another violation of due process [sic]." Pl.'s Mem. [D.E. 62] at 6–7.

In his self-styled "letter motion complaint of perjury," plaintiff states: "since the defendants [deliberately], and fully intentionally denied a chance of administrative redress, that also constitutionally equals to exhaustion of all available remedies." Pl.'s Letter [D.E. 63] at 7.

Plaintiff also seeks to rely upon the declaration of Mason Troy Nickelson, a state inmate at Alexander C.I. See Nickelson Decl. [D.E. 50] (declaring, *inter alia*, that: Nickelson was detained at the CCDC for 17 months; Nickelson can "verify the accuracy" of plaintiff's statement that the CCDC "neglects the duty of sending grievance forms back, *e.g.*, obstructing the grievance

11

procedure by not responding to or making remediation or reparation to the grievance process [sic]";
and Nickerson "wrote grievances at" the CCDC "and never received a response.").

The Detention Center "Inmate Grievance/Request System" policy at the time in question reflects, *inter alia*: Detention Center inmates "will be permitted to file grievances and will be assured of written response from officials in a timely and orderly manner without fear of reprisal or prejudice"; a "'grievance' will be defined as a written complaint made to the Administrator by an inmate concerning policy, procedure, conditions or actions by staff that may directly affect the inmate personally"; "A summary of the inmate grievance system will be included in the Inmate Handbook and provided to the inmates at the time of their admission to the Detention Center"; "Detention Officers will assist and encourage inmates to resolve disputes or complaints informally prior to filing a written grievance on the matter. However, under no circumstances will an Officer attempt to discourage or threaten any inmate desiring to file a written grievance"; "Should an allegation be made by an inmate(s) . . . that an Officer has threatened or retaliated against an inmate for filing a grievance, the Administrator will investigate the matter and appropriate disciplinary action, up to and including termination from employment, will be imposed with the approval of the Sheriff"; inmates may file formal grievances on matters including "[a]ctions taken by staff . . . that have the effect of depriving the inmate of a right, service or privilege afforded to them" and "[a]llegations of abuse, neglect or mistreatment by staff"; "The Sergeant will be responsible for ensuring that a sufficient number of 'Inmate Grievance' forms . . . are available in the control room for Officers to distribute to inmates"; "Any inmate confined to the Detention Center may request an 'Inmate Grievance Form' . . . from any staff member"; "Once a request for a form has been made, the staff member will be responsible for providing a form prior to leaving the Detention

12

Center at the end of his/her duty tour"; "The inmate will be responsible for completing the form and for returning the completed form to a Detention Officer"; the following information is required "[i]n order for a grievance to be processed . . . "[i]nmate name[,] staff member or other individual the inmate wants to meet with or receive a reply from[,] a specific description or summary of the incident[,] signature of inmate and date[,] signature of receiving Officer and date"; "Detention Officers are responsible for accepting all completed grievance forms provided to them by inmates"; "Detention Officers will ensure that grievance forms are delivered to the authority to whom the grievance was addressed prior to their departure from the Detention Center or as soon as possible thereafter"; "The person to whom the grievance was addressed will be responsible for reviewing the grievance and providing a written response to the inmate as soon as possible"; "the written response should include . . . [w]hether he/she agrees or disagrees with the inmate's complaint[,] [a]n explanation or reason for how this conclusion was reached[,] [a]ny action that may have been or will be taken to correct the problem or situation, if applicable"; "[a]nswer to grievance will be read to inmate by Shift Supervisor, signed and dated"; "Inmates may appeal the response they received to their grievance to another Detention Center Officer or the Administrator if they are not satisfied with the response"; the procedure for processing appeals is the same as that for responses to inmate grievances; "Any response by the Sheriff to an appeal will be considered final and cannot be overturned"; and "Copies of all appeals and their accompanying responses shall be filed and maintained by the Administrator." See Defs.' App. [D.E. 54-3] at 70–72.

Despite having NCPLS assistance for discovery, plaintiff's responses in opposition to defendants' instant motion for summary judgment on the exhaustion issue merely present his bald, vague, conclusory declarations and claims that he filed unspecified grievances at the CCDC that

13

did not receive a response.  See Pl.'s Mem. [D.E. 57-2] at 15–16; Clewis Decl. [D.E. 57-4] at 10, ¶18; Pl.'s Resp. [D.E. 60]; Pl.'s Mem. [D.E. 62] at 6–7; Pl.'s Letter [D.E. 63] at 7.   Nickelson's declaration also lacks specificity as to plaintiff's asserted inability to exhaust administrative remedies at the CCDC as to the instant claim.   See Nickelson Decl. [D.E. 50].

By contrast, and as noted above, moving defendants support their failure-to-exhaust argument with declarations that the CCDC grievance procedure was available to plaintiff during the relevant timeframe, but he did not avail himself of it formally or informally.   See Defs.' App., T. Worley Decl. [D.E. 54-1] at ¶¶2–15; id., Creech Decl. [D.E. 54-5] ¶¶1–14; id., Def. Battle Decl. [D.E. 54-8] at ¶8; id., Gore Decl. [D.E. 54-9] at ¶9.

In short, there is no showing that plaintiff utilized administrative remedies "in accordance with the applicable procedural rules" at the CCDC, Woodford, 548 U.S. at 88, and plaintiff does not adduce sufficient facts to support a finding that this grievance procedure amounted to a "dead end" or an opacity, or that an official's "machination, misrepresentation, or intimidation" prevented him from using it.   Ross, 578 U.S. at 642–44; see Moss, 19 F.4th at 623; Moore, 517 F.3d at 725; see also Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) ("The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant.   But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." (internal citations omitted)); Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (holding, if a defendant shows a prisoner did not use available administrative remedies, the burden "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him"); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that

14

remedies were unavailable to him as a result of intimidation by prison officials."); Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (per curiam) (unpublished) (noting plaintiff bears the burden of adducing facts showing he was prevented from accessing the procedure such that administrative remedies were unavailable (citing Moore, 517 F.3d at 725)); Pickens v. Solomon, No. 5:17-CT-3004-FL, 2018 WL 2185939, at *4 (E.D.N.C. May 11, 2018); Humphrey v. Revell, No. 5:11-CT-3168-FL, 2014 WL 1096262, at *5, n.4 (E.D.N.C. Mar. 19, 2014); Goodwin v. Beasley, No. 1:09CV151, 2011 WL 835937, at *3 (M.D.N.C. Mar. 3, 2011); cf. Griffin, 56 F.4th at 335–39 (finding issues of material fact as to the availability of prison grievance procedure); Kaba v. Stepp, 458 F.3d 678, 685 (7th Cir. 2006); Hill v. Haynes, 380 F. App'x 268, 271–72 (4th Cir. 2010) (per curiam) (unpublished) (holding plaintiff showed the unavailability of administrative remedies by submitting an affidavit alleging with specificity that he was threatened by prison officials and not provided proper grievance forms); Hill v. O'Brien, 387 F. App'x 396, 401 (4th Cir. 2010) (per curiam) (unpublished).

After considering the record and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, the court finds that, regardless of the potential merit of plaintiff's claims, moving defendants have shown that he failed to exhaust administrative remedies before filing this action, see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167, but plaintiff fails demonstrate that the grievance procedure was "unavailable" to him, see Ross, 578 U.S. at 643–44; Moss, 19 F.4th at 623; Moore, 517 F.3d at 725; see also Anderson, 477 U.S. at 252 (noting the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment); Erwin v. United States, 591 F.3d 313, 319 (4th Cir. 2010) (noting a nonmoving party "cannot create a material fact by reliance on conclusory allegations or bare denials"); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting

15

"neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)).

Moving defendants have met their burden of demonstrating the absence of a genuine issue of material fact as to exhaustion, Celotex, 477 U.S. at 325, whereas plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted), and moving defendants, therefore, are entitled to summary judgment, Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85.

Accordingly, the court dismisses the action without prejudice, see Booth, 532 U.S. at 735; Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004), and need not address moving defendants' alternative arguments in support of their motion for summary judgment.

### Conclusion:

For the reasons discussed above, the court: DISMISSES WITHOUT PREJUDICE Sgt. Lee as a defendant pursuant to Fed. R. Civ. P 4(m); DENIES the motion to set a deadline for defendants to answer [D.E. 42]; DENIES the motion seeking a subpoena for production of documentary evidence [D.E. 48]; GRANTS the motion to amend the complaint [D.E. 49]; DENIES the "motion why the court should find favor in/with Plaintiff [sic]" [D.E. 51]; GRANTS moving defendants' motion for summary judgment [D.E. 52]; DISMISSES WITHOUT PREJUDICE the action due to plaintiff's failure to exhaust administrative remedies; and DIRECTS the clerk to close the case.

SO ORDERED this 25th day of March, 2024.

RICHARD E. MYERS II
Chief United States District Judge

16